**Johanna TREVINO, Plaintiff–Appellant,**

**v.**

**Daryl GATES; Tom Bradley; Tom Reddin; Roger Murdock; Ed Davis; Herbert Boeckmann; James Fisk; Stephen Gavin; Maxwell Greenberg; Elbert Hudson; Marguerite Justice; Emmett McGaughey; Salvador Montenegro; Barbara Schlei; Robert Talcott; Reva Tooley; Robert Weil; Samuel Williams; Stephen Yslas; LAPD Officers; Jerry Brooks; Joseph Callian; Warren Sirk; Richard Spellman; Gary Strickland; James Tippings; Richard Zierenberg; Manuel Avila; Charles Bennett; Brian Davis; John Fruge; Joseph Freia; E.T. Guiza; Peter Sanchez; Reginald Weaver; James Toma; C.S. Winston; Philip Wixon; Gary Zerbey; Joel Wachs; Joy Picus; John Ferraro; Zev Yaroslavsky; Ruth Galanter; Ernani Bernardi; Nate Holden; Marvin Braude; Hal Bernson;**

Michael Woo; Joan Flores; One Hundred Unknown Named Employees or Officials of the City of Los Angeles, all in both their individual and official capacities; City of Los Angeles, Defendants–Appellees.

Johanna TREVINO, Plaintiff–Appellant,

v.

Daryl F. GATES, Chief of Police; Tom Bradley; Tom Reddin; Roger Murdock; Ed Davis; Herbert Boeckmann; James Fisk; Stephen Gavin; Maxwell Greenberg; Elbert Hudson; Marguerite Justice; Emmett McGaughey; Salvador Montenegro; Barbara L. Schlei; Robert Talcott; Reva B. Tooley; Robert Weil; Samuel L. Williams; Stephen D. Yslas; Jerry Brooks; Joseph Callian; Warren Eggar; David B. Harrison; John Helms; Michael Sirk; Richard Spellman; Gary Strickland; James Tippings; Richard Zierenberg; Manuel Avila; Charles Bennett; Brian Davis; John Fruge; Joseph Freia; E.T. Guiza; Peter Sanchez; Reginald Weaver; James Toma; C.S. Winston; Philip Wixon; Gary Zerbey; Joel Wachs; Joy Picus; John Ferraro; Zev Yaroslavsky; Ruth Galanter; Ernani Bernardi; Nate Holden; Marvin Braude; Hal Bernson; Michael Woo; Joan Milke Flores; One Hundred Unknown Named Employees/Officials of the City of Los Angeles, all in both their individual and official capacities; City of Los Angeles, Defendants–Appellees.

Nos. 95–55290, 95–56100.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 6, 1996.

Decided Nov. 1, 1996.

Stephen Yagman, Yagman & Yagman, Venice, CA, for plaintiff-appellant.

Katherine J. Hamilton, Assistant City Attorney, Los Angeles, CA; Louis R. Miller and Jonathan H. Anschell, Christensen, White, Miller, Fink & Jacobs, Los Angeles, CA, for defendants-appellees.

Before: D.W. NELSON, T.G. NELSON, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge:

Plaintiff Johanna Trevino is the daughter of Juan Bahena, one of three men killed by Los Angeles Police Department ("LAPD") officers during a robbery. Among other claims, Trevino alleged that the City of Los Angeles ("City") and members of the Los Angeles City Council ("Councilmembers")

deprived her of her civil rights in violation of 42 U.S.C. § 1983 by indemnifying LAPD officers against punitive damage liability in excessive force cases. Trevino appeals the district court's entry of summary judgment for the Councilmembers and the City, along with numerous other issues. We affirm all of the district court's rulings, with the exception of the attorneys' fees award.

## BACKGROUND

Juan Bahena was fatally shot by LAPD officers shortly after he and three accomplices robbed a McDonald's restaurant on February 12, 1990. While leaving the scene, Bahena and the other perpetrators were surrounded by police officers. Believing the burglars to be pointing guns in their direction, the officers opened fire, killing three of the four suspects. None of the perpetrators were bearing actual firearms, only pellet guns.

Trevino's grandmother and survivors of the other victims sued the officers involved, the police chief and the City of Los Angeles for violations of 42 U.S.C. § 1983 based on the use of excessive force. *Gomez v. Gates,* 804 F.Supp. 69 (C.D.Cal.1992). Trevino was not a party to the lawsuit. The *Gomez* jury found the police chief and the officers involved liable, awarded nominal compensatory damages of $1 and a total of $44,000 in punitive damages in varying amounts against the LAPD officers. After deliberating for two days, the City Council voted to pay the punitive damage award pursuant to Cal. Gov. Code § 825(b).

Trevino then filed a lawsuit against the officers involved, the Councilmembers and the City under 42 U.S.C. § 1983. She sued the officers on substantially the same theories her grandmother asserted in *Gomez* represented by the same lawyer as her grandmother had been. Trevino also sued the City and Councilmembers on the theory that punitive damage indemnification encouraged excessive force and caused a deprivation of her constitutional rights. Alternatively, she claimed the Council's decision to pay the *Gomez* punitive damage award was an unconstitutional ratification of LAPD's excessive force.

In 1993, the district court held Trevino was collaterally estopped from relitigating punitive damage liability because the *Gomez* verdict had already determined the issue. The district court limited punitive damages to $9,109, the highest amount awarded to any plaintiff in *Gomez.* The defendant officers stipulated to a total punitive damages award of $9,109. The only remaining issue to be litigated against the officers was the compensatory damages due to Trevino.

After two mistrials, trial was reset for December 6, 1994. The district court granted summary judgment to the City and the Councilmembers. At trial, the jury awarded Trevino only nominal damages against the officers. The district court entered judgment in the amount of $1 plus $9,109 in stipulated punitive damages. Trevino moved for attorney's fees in the amount of $495,885 under 42 U.S.C. § 1988. The district court awarded $25,000.

## SUMMARY JUDGMENT FOR COUNCILMEMBERS BASED ON QUALIFIED IMMUNITY

Trevino contends that the district court erred in granting summary judgment for the Councilmembers on the grounds of qualified immunity. We review the court's grant of qualified immunity and summary judgment de novo. *Neely v. Feinstein,* 50 F.3d 1502, 1507 (9th Cir.1995); *Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir. 1995); *cert. denied,* —— U.S. ——, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996). Qualified immunity is an immunity from suit. *Act Up!/Portland v. Bagley,* 988 F.2d 868, 872 (9th Cir.1993). Public officials sued under 42 U.S.C. § 1983 are entitled to qualified immunity if:

(1) the "right" they allegedly violated was not "clearly established" at the time of the violation, or

(2) if a reasonable [official] would have thought that the defendants' actions were constitutional.

*Palmer v. Sanderson,* 9 F.3d 1433, 1435 (9th Cir.1993) (citations omitted); *see also Neely,* 50 F.3d at 1507. The plaintiff has the burden of proving that the right allegedly vio-

lated was clearly established. *Id.* at 1509. If the plaintiff meets this burden, then the defendant must prove that his conduct was "reasonable even though it might have violated the law." *Id.* "The threshold determination of whether the law governing the conduct at issue is clearly established is a question of law for the court." *Act Up!,* 988 F.2d at 873.

Trevino has alleged that the Councilmembers, by engaging in a policy of routinely voting to pay punitive damages, violated Trevino's constitutional rights by promoting and ratifying the use of excessive force by the LAPD. Although this issue is contested, we will assume for purposes of this analysis only that the City Council actions constituted a custom or policy of indemnifying officers for punitive damage awards.

Under the first part of the qualified immunity test, Trevino must demonstrate that the policy violated clearly established law.

> To be clearly established, the law must be sufficiently clear that a *reasonable official would understand that what he is doing violates that right.* It is not necessary that the alleged act have been previously declared unconstitutional, as long as the unlawfulness was apparent in light of preexisting law.

*Newell v. Sauser,* 79 F.3d 115, 117 (9th Cir. 1996) (citation and internal quotations omitted, emphasis added). To determine whether law is clearly established, we "survey the legal landscape" and examine those cases that are "most like" the instant case. *Figueroa v. United States,* 7 F.3d 1405, 1409 (9th Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 1537, 128 L.Ed.2d 190 (1994). "In the absence of binding precedent, we look to all available decisional law." *Id.* (citations and internal quotations omitted).

A survey of the legal landscape demonstrates that the law is not sufficiently clear that a reasonable Councilmember would understand that payment of punitive damages

violates any constitutional right either now or prior to the fatal shooting.

First, a municipality's payment of punitive damages under Cal. Govt.Code § 825(b) does not violate federal law.[1] *Cornwell v. City of Riverside,* 896 F.2d 398, 399 (9th Cir.), *cert. denied,* 497 U.S. 1026, 110 S.Ct. 3274, 111 L.Ed.2d 784 (1990). Indeed, as the court noted in *Cornwell,* a municipality's payment of punitive damages may have the salutary purpose of assuring that civil rights plaintiffs can collect their judgments. *Id.* at 400.

Second, cases from other jurisdictions have held that a punitive damages indemnification policy could not cause a constitutional deprivation. *Ekergren v. City of Chicago,* 538 F.Supp. 770, 772–773 (N.D.Ill.1982); *Brown v. City of Chicago,* 573 F.Supp. 1375, 1379 (N.D.Ill.1983).

Third, under California law, indemnification is discretionary, subject to certain restrictions. Cal. Gov.Code § 825(b). In making its indemnification decision, the municipality uses its own independent judgment as to the underlying facts. "That the city reaches a different result as to the good faith of the officers than a federal jury is not decisive: the city is not bound by the jury's findings when it makes its decision to indemnify." *Cornwell,* 896 F.2d at 399.

Thus, far from being "clearly established law," a policy of indemnifying punitive damage awards has never been judicially determined as violating constitutional rights by encouraging police officers to use excessive force. In fact, *Cornwell* indicates that indemnification is discretionary and *Ekergren* casts serious doubt on whether an indemnification policy may legally cause the use of excessive force. Such a policy is not sufficiently similar to other actions that have been held unconstitutional to put reasonable Councilmembers on notice that their actions could possibly violate constitutional rights. *See Chew v. Gates,* 27 F.3d 1432, 1449–50 (9th Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 1097, 130 L.Ed.2d 1065 (1995).

---

1. Under Cal. Gov.Code § 825(b) a public entity, "acting in its sole discretion," may pay punitive damages awarded against a public employee if: (i) the employee was acting within the course and scope of employment during the incident in question, (ii) the employee acted "in good faith, without actual malice and in the apparent best interests of the public entity," and (iii) payment of the punitive damages "would be in the best interest of the public entity."

Therefore, we conclude that the law is not clearly established that a policy of indemnifying punitive damage awards violates constitutional rights, either now or prior to the robbery. A city council does not violate section 1983 if it indemnifies officers against punitive damage awards on a discretionary, case by case basis, and complies in good faith with the requirements of Cal. Gov.Code § 825(b).

Because Trevino failed to demonstrate that the Councilmembers' conduct violated a clearly established constitutional right, we need not address the second prong of the qualified immunity test. We affirm summary judgment for the Councilmembers. *See Lucero v. Hart,* 915 F.2d 1367, 1371 (9th Cir.1990).

## SUMMARY JUDGMENT FOR THE CITY ON THE MERITS

■ Trevino alleges that the district court also erred in granting summary judgment to the City on the merits. Even though the Councilmembers are entitled to qualified immunity, the City may still be subject to municipal liability for causing a constitutional violation under 42 U.S.C. § 1983. *Owen v. City of Independence,* 445 U.S. 622, 651–52, 100 S.Ct. 1398, 1415–16, 63 L.Ed.2d 673 (1980). As a prerequisite to establishing Section 1983 municipal liability, the plaintiff must satisfy one of three conditions:

> First, the plaintiff may prove that a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity. Second, the plaintiff may establish that the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself thus constituted an act of official governmental policy. Whether a particular official has final policy-making authority is a question of state law. Third, the plaintiff may prove that an official with final policy-making authority

ratified a subordinate's unconstitutional decision or action and the basis for it. *Gillette v. Delmore,* 979 F.2d 1342, 1346–47 (9th Cir.1992) (citations and internal quotations omitted), *cert. denied,* 510 U.S. 932, 114 S.Ct. 345, 126 L.Ed.2d 310 (1993).

■ After proving that one of the three circumstances existed, a plaintiff must also show that the circumstance was (1) the cause in fact and (2) the proximate cause of the constitutional deprivation. *Arnold v. International Business Machines Corp.,* 637 F.2d 1350, 1355 (9th Cir.1981); *see also City of Springfield v. Kibbe,* 480 U.S. 257, 266–68, 107 S.Ct. 1114, 1119–20, 94 L.Ed.2d 293 (1987) (discussing causation requirement in section 1983 municipal liability cases).

### a. *Violation by policy or custom*

Prior to the robbery, the City had not adopted a formal policy of indemnifying individual police officers for punitive damage judgments. On the contrary, the City considers each case individually on its merits pursuant to Cal. Govt.Code § 825(b). As we have noted, this practice is not facially unconstitutional. *Cornwell,* 896 F.2d at 399.

■ Absent a formal governmental policy, Trevino must show a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity." *Gillette,* 979 F.2d at 1346–47. The custom must be so "persistent and widespread" that it constitutes a "permanent and well settled city policy." *Monell v. Dept. of Soc. Serv. of N.Y.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy. *Bennett v. City of Slidell,* 728 F.2d 762, 767 (5th Cir.1984); *see also, Meehan v. Los Angeles County,* 856 F.2d 102 (9th Cir.1988) (two incidents not sufficient to establish custom); *Davis v. Ellensburg,* 869 F.2d 1230 (9th Cir.1989) (manner of one arrest insufficient to establish policy).[2]

---

**2.** Liability based on custom is different from liability based on ratification or delegation where a single incident causally related to the constitu-

tional deprivation may be sufficient for liability to attach. *City of St. Louis v. Praprotnik,* 485 U.S. 112, 127, 108 S.Ct. 915, 926, 99 L.Ed.2d

The City contends that no indemnification custom exists and, in fact, that prior to the fatal shooting the City Council had never voted to pay a punitive damage award against an individual officer. Trevino argues that by voting to settle some civil rights cases and posting appeal bonds in others, the City indirectly engaged in a custom or policy of indemnifying punitive damage awards.

As of January 30, 1995, the Councilmembers voted that the City pay punitive damages in approximately eleven or twelve police-related lawsuits filed since 1985, when Cal. Gov.Code § 825(b) was enacted. The Councilmembers submitted unrebutted evidence that their votes to pay punitive damages occurred after assuring compliance with Cal. Govt.Code § 825(b) and upon advice of the City Attorney. More importantly, the Councilmembers did not vote that the City should pay punitive damages in *any* police case prior to February 12, 1990, the date the McDonald's robbery occurred. From 1985 to the date the district court granted summary judgment, the Council voted against the payment of punitive damages in two police-related lawsuits.

Only those police officers who are represented in litigation by the City Attorney are eligible to have punitive damages awards paid by the City. Cal. Gov.Code § 995 *et seq.* provides that municipal employees are entitled to legal representation at City expense if they are sued for acts that (i) occurred within the course and scope of employment, and (ii) did not involve actual malice, fraud or corruption. Under this standard, LAPD officers have been denied representation in at least twenty lawsuits, some of which occurred prior to February 12, 1990. Officers denied representation for acting with malice or beyond the scope of employment must pay their own legal fees and punitive damages.

The City has also settled police-related lawsuits after a jury verdict awarding punitive damages and prior to appeal. The record establishes that the purpose of settling such cases is to minimize the cost to the City's treasury and taxpayers. Settlements are recommended by the City Attorney and approved by the City Council when it is apparent that the costs of appeal and further litigation, exposure for attorneys' fees and costs, and the potential for an increased damage award in the event of a retrial make it likely that the ultimate cost to the City's treasury will exceed the settlement figure. From January 1985 through October 1994, the City settled approximately seventeen or eighteen lawsuits after a verdict.

There is no genuine issue of material fact concerning cases in which action was taken by the Councilmembers prior to February 12, 1990, the date Bahena was killed. There were nine excessive forces cases in which punitive damages were awarded that the Council voted to settle prior to February 12, 1990.[3] The plaintiff waived payment of punitive damages in four of the nine settled cases. In two additional cases, the Councilmembers did not vote to settle until after February 12, 1990, but prior to that date the Councilmembers voted to post a bond on the judgment for compensatory and punitive damages pending appeal. The bond was posted based upon the advice of the City Attorney. Nothing in the record indicates that the bond was ever executed.

■ Viewing plaintiff's evidence in the light most favorable to her, the undisputed evidence falls far short of establishing a "persistent and widespread" practice such that it constitutes "permanent and well settled" city policy. The record is virtually devoid of any direct evidence of council indemnification prior to the shooting. The record as to the

107 (1988); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452 (1986).

**3.** The City submitted a chart detailing cases from 1979 to 1994 involving punitive damages. Trevino alleges that the first eighteen cases pre-date the incident. However, she is mistaken because the date on the chart is not the date of settlement, payment or bonding of punitive damages. Three of the eighteen cases were settled, paid or bonded after February 12, 1990. In two of the eighteen, the City did not pay, settle or bond punitive damages. One of the cases is not an excessive force case and one case had a result which was unknown to the City. Of the eleven remaining cases, the City voted to post bond in two and voted to settle nine prior to February 12, 1990. In four of the settled cases, punitive damages were waived as part of the settlement.

indirect claims reveals a varied and inconsistent *ad hoc* practice of resolving excessive force cases prior to the incident in question. If there is a pattern, it is more reflective of normal municipal claims adjusting with all its inconsistencies and imperfections than of subtle conspiracy to indemnify officers outside the public eye. When one must resort to inference, conjecture and speculation to explain events, the challenged practice is not of sufficient duration, frequency and consistency to constitute an actionable policy or custom.

Normally, the question of whether a policy or custom exists would be a jury question. However, when there are no genuine issues of material fact and the plaintiff has failed to establish a prima facie case, disposition by summary judgment is appropriate. The moving party on a motion for summary judgment bears the "initial responsibility of informing the district court of the basis for its motion...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The defendants met their initial burden. The burden then shifts to the nonmoving party to provide evidence sufficient to establish that there is a genuine issue of material fact as to each element essential to that party's case on which that party will bear the burden of proof at trial. *Id.* at 322–25, 106 S.Ct. at 2552–54. Trevino failed to meet her burden of rejoinder and the City is entitled to judgment as a matter of law.

Because we find as a matter of law that Trevino has failed to establish a "custom or policy," we need not analyze whether the alleged policy or custom was the cause in fact and the proximate cause of the constitutional deprivation.

b. *Action by a person with final policy-making authority.*

■ The second circumstance under which a municipality may incur section 1983 liability is when the individual who committed the constitutional tort was an official with "final policy-making authority" and that the challenged action itself thus constituted an act of official government policy. *Gillette*, 979 F.2d at 1346. As to matters of police policy, the chief of police under some circumstances may be considered the person possessing final policy-making authority. *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir.1991). The police officers who shot Bahena were not "officials with final policy-making authority" and they were not ordered to shoot by the police chief, the City Council or anyone else possessing final policy-making authority. Thus, the City is not liable under this theory.

c. *Ratification*

Trevino argues that by voting to pay the *Gomez* punitive damage awards, the City ratified the officers' conduct. *Gillette's* ratification test is satisfied if a plaintiff can "prove that an official with final policy-making authority ratified a subordinate's decision or action and the basis for it." *Gillette*, 979 F.2d at 1346–47; *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915, 926, 99 L.Ed.2d 107 (1988).

We have found municipal liability on the basis of ratification when the officials involved adopted and expressly approved of the acts of others who caused the constitutional violation. *See, e.g., Hammond v. County of Madera*, 859 F.2d 797, 802–03 (9th Cir.1988) (board, which was responsible for approving transfers of rights-of-way, accepted and approved of transfer documents that resulted in deprivation of constitutional rights); *Larez v. City of Los Angeles*, 946 F.2d 630, 645–48 (9th Cir.1991) (individual filed a complaint with the LAPD alleging excessive force was used against him in a search, LAPD investigated it, and the police chief signed a letter stating that none of the complaints would be sustained, thereby ratifying the investigation and search); *Fuller v. City of Oakland*, 47 F.3d 1522, 1526 (9th Cir.1995) (an officer investigated complaints of sexual harassment, and police chief who approved investigator's report and conclusion that there was no harassment ratified the investigator's conclusion).

■ By contrast, the City Council in this case was not deciding whether to approve the officers' conduct; it was debating whether or not to compensate victims of the constitution-

al deprivation. The City Council deliberated for two days, considering many points of view. In the end, it found that payment of punitive damages "would be in the best interest" of the City. Thus, under these circumstances, the Councilmembers' vote to pay punitive damages does not amount to ratification.

Were we to find ratification, our holding would fly in the face of *Cornwell* by indirectly finding that a municipality's payment of punitive damages under Cal. Govt.Code § 825(b) violates federal law. *Cornwell*, 896 F.2d at 399. Further, such a holding would deter any municipality from choosing to pay victims of constitutional violations, thus thwarting the very purpose of section 1983.

Because we find no ratification, we need not discuss whether the alleged ratification was the cause in fact and proximate cause of the constitutional deprivation.

#### d. *Conclusion*

Therefore, because there is no genuine issue of material fact as to whether Trevino can establish any of the three *Gillette* theories, the district court correctly granted the City summary judgment.

### DISCOVERY ISSUES

Trevino argues that she was denied discovery. Specifically, Trevino argues she should have been afforded the opportunity pursuant to Rule 56(f) to receive the tape-recordings of closed-session Councilmember deliberations regarding votes to pay punitive damages and to depose the Councilmembers and members of the City Attorney's staff as to each specific instance in which punitive damages were discussed.

4. Trevino argues that the City was required to produce copies of the recordings, but she never raised this argument before the district court in the form of a motion to compel. Also, a party who produces documents for inspection is not required to make copies for the other party. *See* 8A Charles A. Wright *et al., Federal Practice and Procedure* § 2213 (1994).

5. Rule 72(a) states that a party must file objections to a Magistrate Judge's order within 10 days, and "a party may not thereafter assign as

We review a denial of a Rule 56(f) motion for abuse of discretion. *Maljack Prods, Inc. v. GoodTimes Home Video Corp.,* 81 F.3d 881, 887 (9th Cir.1996). The district court did not abuse its discretion because, among other reasons: (1) Trevino failed to identify the disputed issues in her Rule 56(f) motion; (2) Trevino's counsel was in fact afforded the opportunity to listen to the recordings;[4] and (3) Trevino did not timely challenge the Magistrate Judge's order staying the depositions as required by Rule 72(a), F.R.Civ.P.[5]

### FAILURE TO GIVE JURY INSTRUCTION ON PRESUMED DAMAGES

Trevino argues that the district court erred when it refused to instruct the jury that presumed damages may be recovered by a section 1983 plaintiff. The jury instructions stated that compensatory damages may be awarded upon proof of actual injury, and in the absence of such proof, nominal damages for violation of a constitutional right are appropriate. When a party claims that the trial court's jury instruction misstated the elements that must be proved at trial, we review the instruction de novo. *Gizoni v. Southwest Marine Inc.,* 56 F.3d 1138, 1142 (9th Cir.), *cert. denied* — U.S. ——, 116 S.Ct. 381, 133 L.Ed.2d 304 (1995).

Damages are not presumed to flow from every constitutional violation. *Carey v. Piphus,* 435 U.S. 247, 263, 98 S.Ct. 1042, 1052, 55 L.Ed.2d 252 (1978). Presumed damages are appropriate when there is a great likelihood of injury coupled with great difficulty in proving damages. *Id.* at 264, 98 S.Ct. at 1052. A presumed damage instruction is not required when, as in this case, "the jury was fully authorized to com-

error a defect in the magistrate judge's order to which object was not timely made." The record reveals that Trevino never appealed the Magistrate Judge's order to the district court. Trevino does not dispute this fact in her appellate briefs. Trevino's failure to comply with Rule 72(a) precludes her from challenging the Magistrate Judge's order on appeal. *Palmer v. United States,* 794 F.2d 534, 540 (9th Cir.1986); *McKeever v. Block,* 932 F.2d 795, 799 (9th Cir. 1991).

pensate respondent for both monetary and nonmonetary harms caused by petitioners' conduct." *Memphis Community School District v. Stachura,* 477 U.S. 299, 312, 106 S.Ct. 2537, 2545, 91 L.Ed.2d 249 (1986). Here, Trevino ably presented evidence and argued to the jury she was entitled to compensatory damages for emotional and economic harm. The case was submitted to the jury on Trevino's compensatory damage theory. Under these circumstances, a presumed damages instruction was not mandated.

■■■ If the jury fails to find actual injury, nominal damage awards for constitutional violations are appropriate. *See George v. City of Long Beach,* 973 F.2d 706, 708 (9th Cir. 1992) (nominal damages instruction is appropriate in § 1983 case against police officers alleging warrantless arrest when no actual damages are proved), *cert. denied* 507 U.S. 915, 113 S.Ct. 1269, 122 L.Ed.2d 664 (1993); *Draper v. Coombs,* 792 F.2d 915, 921 (9th Cir.1986).

Accordingly, the district court did not err in refusing to instruct the jury on the availability of presumed damages.

## TESTIMONY EXCLUSION

Trevino claims the district court erred by excluding her own testimony and that of her economic damage experts.

■■■ The district court precluded Trevino's own testimony under Fed.R.Evid. 403, finding its probative value was outweighed by its prejudicial effect. The district court has considerable latitude in performing a Rule 403 balancing test and we will uphold its decision absent clear abuse of discretion. *Rogers v. Raymark Industries, Inc.,* 922 F.2d 1426, 1430 (9th Cir.1991). The fact that a party can present the relevant testimony through other witnesses is a factor that weighs in favor of exclusion of the prejudicial testimony. *Id.*

■■■ The district court did not abuse its discretion in refusing to allow Trevino to testify. Trevino would have testified regarding the emotional distress she suffered due to the loss of her father. Trevino was not yet born when her father was killed, and she was only five years old at the time of the trial. The district court thus concluded that there was little probative value to Trevino's testimony because she could not meaningfully testify as to the distress she had suffered in the past or would suffer in the future. Trevino's counsel intended to question her on her "impression of what happened to her father ... and how she thinks her father died." The district court concluded that any probative value of Trevino's testimony was outweighed by the clear prejudicial effect of having a highly sympathetic child testify who knew nothing about the circumstances of her father's death. More importantly, Trevino was given the opportunity to introduce evidence of her emotional distress through a psychiatrist who had examined her. Although we disfavor exclusion of a plaintiff's own testimony, we find under these circumstances, the district court did not abuse its discretion in refusing to allow Trevino to testify.

■■■ Trevino also appeals the district court's exclusion of expert testimony for lack of foundation. "The trial court has broad discretion in admitting and excluding expert testimony, and the court's action will be sustained unless it is manifestly erroneous." *LuMetta v. United States Robotics, Inc.,* 824 F.2d 768, 771 (9th Cir.1987) (internal quotations omitted). "[W]here foundational facts demonstrating relevancy ... are not sufficiently established, exclusion of proffered expert testimony is justified." *Id.*

■■■ Two experts were excluded: an economist to project Bahena's future income and a domestic relations lawyer to opine how much of the future income stream Bahena could have been required to pay Trevino's mother as child support. Both opinions were predicated on the assumption that Bahena was employed as a full time mechanic when he was killed. The only foundation laid for this assumption was testimony that (1) Bahena left in the morning and returned in the evening; (2) he gave Trevino's mother money at fairly regular intervals and (3) he was observed on a few occasions working on cars. There were no pay stubs, no W–2s, no tax returns, no cancelled checks, and no employer testimony offered as foundational evi-

dence. Given the state of the record, it was not manifestly erroneous for the district court to exclude the expert testimony for lack of foundation. *See Shatkin v. McDonnell Douglas Corp.*, 727 F.2d 202, 207 (2nd Cir.1984) (vague assurances about future support are not an adequate foundation for expert testimony on future income).

## COLLATERAL ESTOPPEL

Trevino claims she should be entitled to relitigate the *Gomez* punitive damage award, which she contends was grossly inadequate. The district court reasoned that the interests of Trevino and her grandmother were identical with regard to punitive damages and held that *Gomez* punitive damage verdict collaterally estopped relitigation of the issue in this case.

"Whether collateral estoppel is available is a mixed question of law and fact subject to de novo review." *Town of North Bonneville v. Callaway*, 10 F.3d 1505, 1508 (9th Cir.1993). Federal law governs the collateral estoppel effect of a case decided by a federal court. *Fireman's Fund Ins. Co. v. International Market Place*, 773 F.2d 1068, 1069 (9th Cir.1985). To foreclose relitigation of an issue under federal law:

> (1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated [by the party against whom preclusion is asserted] in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action.

*Town of North Bonneville*, 10 F.3d at 1508 (citations omitted). Trevino contends that the first two elements have not been met.

The issue of the amount of punitive damages to be awarded to Trevino is identical to the issue of punitive damages in *Gomez*. We have precluded the litigation of punitive damages for conduct which was the subject of punitive damages in a prior action. *Bates v. Union Oil Company of California*, 944 F.2d 647, 649–51 (9th Cir.1991), *cert. denied*, 503 U.S. 1005, 112 S.Ct. 1761, 118 L.Ed.2d 424 (1992). The Supreme Court has held that "the amount of the punitive award is initially determined by a jury instructed to consider the gravity of the wrong and the need to deter similar wrongful conduct." *Pacific Mutual Life Insurance Company v. Haslip*, 499 U.S. 1, 15, 111 S.Ct. 1032, 1041, 113 L.Ed.2d 1 (1991). Punitive damage awards are founded on the defendants' conduct. The wrongful conduct of defendants to be deterred is identical in both *Gomez* and this case: the use of excessive force.

Trevino argues, however, that the wrongful conduct to be deterred is the deprivation of Trevino's constitutional liberty interest in her relationship with her father. In contrast, Trevino's grandmother was deprived of her constitutional liberty interest in her relationship with her son. Trevino contends that her liberty interest in her relationship with her father is thus distinct from her grandmother's liberty interest.

We recognize that "a child's interest in her relationship with a parent is sufficiently weighty by itself to constitute a cognizable liberty interest." *Smith v. City of Fontana*, 818 F.2d 1411, 1419 (9th Cir.), *cert. denied*, 484 U.S. 935, 108 S.Ct. 311,98 L.Ed.2d 269 (1987); *see also Crumpton v. Gates*, 947 F.2d 1418, 1424 (9th Cir.1991). Nonetheless, Trevino's argument fails. The violation of Trevino's liberty interest in her relationship with her father bears on the harm suffered by Trevino, rather than the conduct to be deterred. The violation of Trevino's liberty interest is therefore addressed through compensatory damages rather than punitive damages. Accordingly, the issue of the amount of punitive damages to be awarded against the officers for use of excessive force is identical in both *Gomez* and in this case.

The second element of collateral estoppel is that the issue must have been actually litigated by the party against whom estoppel is asserted. Although Trevino was not a party in *Gomez*, a "person technically not a party to the prior action may be bound by the prior decision if his interests are so similar to a party's that that party was his virtual representative in the prior action." *United States v. Geophysical Corporation of Alaska*, 732 F.2d 693, 697 (9th Cir.1984) (internal quotations omitted); *see also Shaw v. Hahn*,

56 F.3d 1128, 1131 (9th Cir.), *cert. denied*, — U.S. —, 116 S.Ct. 418, 133 L.Ed.2d 336 (1995). Sufficient similarity of interests to justify the application of collateral estoppel has been found in a variety of cases. *See, e.g., In re Gottheiner*, 703 F.2d 1136, 1140 (9th Cir.1983) (similarity of interests found between a close corporation and its sole or controlling stockholder); *Shaw*, 56 F.3d at 1131–32 (juror was collaterally estopped from litigating issue of discriminatory use of peremptory challenges; juror's interests were virtually represented by plaintiff in prior proceeding who objected to the discriminatory use of such challenges). "Although a familial relationship need not, in and of itself, confer privity status, it does constitute an important factor when assessing the preclusive effects of a prior adjudication." *Jaffree v. Wallace*, 837 F.2d 1461, 1467 (11th Cir. 1988).

The interests of Trevino's grandmother in *Gomez* and the interests of Trevino in this case are identical with regard to the punitive damages to be awarded against the officers for the use of excessive force against Trevino's father. Trevino's grandmother had tremendous incentive in *Gomez* to see the officers severely punished for their actions. Trevino has the same goal in this action. Thus, the interests of Trevino and her grandmother are so similar that Trevino's grandmother virtually represented Trevino in *Gomez*. *See Geophysical*, 732 F.2d at 697. Although a familial relationship does not necessarily confer privity status, the relationship between Trevino and her grandmother is sufficient in this case. *See Jaffree*, 837 F.2d at 1467.

Accordingly, all of the elements of collateral estoppel are satisfied, and the district court did not err.

## ATTORNEYS' FEES

At the conclusion of the case, Trevino moved for attorneys' fees pursuant to 42 U.S.C. § 1988 in the amount of $495,885. The district court found that Trevino was entitled to recover reasonable attorneys' fees under section 1988. The district court calculated the fee by determining a reasonable hourly rate. Trevino's counsel submitted evidence that the reasonable hourly rate in the community for experienced private attorneys handling complex litigation ranged from $250 to $550/hour. However, the district court noted that the City had submitted evidence in *Gomez*, 804 F.Supp. 69, that the City pays private attorneys that it hires to defend excessive force cases $175/hour maximum, $125 to $135/hour for attorneys with partner status and experience, and $90 to $125/hour for associates. Relying on these defense rates, the district court held that $135/hour for lead counsel and $100/hour for associate counsel was reasonable in this case because it involved mostly simple issues. The district court awarded $25,000 in fees. On appeal, Trevino argues that the district court erred in using defense attorney rates in choosing an appropriate hourly rate.

We review an attorney's fees award pursuant to 42 U.S.C. § 1988 for abuse of discretion. *Corder v. Gates*, 947 F.2d 374, 377 (9th Cir.1991). "As such, the district court's fee award will be overturned if it is based on an inaccurate view of the law or a clearly erroneous finding of fact." *Id.*

Under section 1988, the reasonable hourly rate is determined by "considering the experience, skill and reputation of the attorney requesting fees." *Schwarz v. Secretary of Health & Human Services*, 73 F.3d 895, 908 (9th Cir.1995) (citations and internal quotations omitted). This determination "should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Id.* (citations and internal quotations omitted). In setting a reasonable hourly rate, a district court may consider the factors developed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974), which we approved in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69–70 (9th Cir.1975), *cert. denied*, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195; *Davis v. City and County of San Francisco*, 976 F.2d 1536, 1546 (9th Cir.1992), *vacated on other grounds* 984 F.2d 345 (1993); *see also McGrath v. County of Nevada*, 67 F.3d 248, 252 (9th Cir.1995). The *Johnson–Kerr* factors "include the novelty and difficulty of the issues

involved in a case, [and] the skill required to litigate those issues...." *Davis,* 976 F.2d at 1546.

■ The district court did not abuse its discretion in reducing the rate requested by Trevino because many of the issues were not complex. An individual attorney need not be awarded the same hourly rate in all Section 1983 cases because not all such cases are equally complex. Here, the only issue that was tried was the compensatory damages due to Trevino, which the district court appropriately characterized as "the equivalent of a lawsuit over compensatory damages in a state wrongful death case." Trevino's attorney had already conducted a full trial on the same issue with respect to other parties in *Gomez.* The liability of the police officers was already determined in *Gomez.* The case was tried three times before a jury. The district court did not err in concluding that these issues were not complex. In addition, the district court correctly recognized that some issues, such as collateral estoppel and qualified and absolute immunity, were complex. The district court's opinion on these points is well-reasoned.

■ However, the district court should not have relied on the rates paid by the City to private attorneys for defending excessive force cases as a starting point for the reasonable hourly rate. In determining the reasonable hourly rate, the court should be guided by "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Schwarz,* 73 F.3d at 908. "As the Supreme Court made clear in *Blum* ... the proper reference point in determining an appropriate fee award is the rates charged by private attorneys in the same legal market as prevailing counsel...." *Davis,* 976 F.2d at 1547 (citing *Blum v. Stenson,* 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984)). Private attorneys hired by a government entity to defend excessive force cases are not in the same legal market as private plaintiff's attorneys who litigate civil rights cases. In addition, attorneys hired by a government entity to defend excessive force cases are not acting as "private" attorneys at all.

The Eleventh Circuit ruled on this issue in *Brooks v. Georgia State Board of Elections,* 997 F.2d 857, 869–70 (11th Cir.1993). In *Brooks,* when setting a reasonable hourly rate for the plaintiff's attorney, the district court relied on the rate charged by a private attorney hired by the state to defend the case. The *Brooks* court stated:

> We have recognized in the past that private attorneys often charge lower rates to the government because of counterbalancing benefits such as repeat business, and [w]here the facts show this, the fee charged by a government attorney is simply irrelevant to the establishment of a reasonable hourly rate for a plaintiff's civil rights lawyer.

*Id.* at 869 (citations and internal quotations omitted). The Eleventh Circuit held that "it was clear error for the district court panel to rely so heavily on the rate paid to opposing counsel. We remand the case to it so that the hourly rate can be fixed free of this error." *Id.* at 870.

We agree with the Eleventh Circuit. Here, the rates charged by private attorneys to defend excessive force cases on behalf of the City were significantly lower than the evidence submitted by Trevino regarding prevailing rates in the community for private attorneys in the same legal market as Trevino's attorney. Of course, we are mindful that the district court used the defense rates in *Gomez* without any complaint by Trevino's counsel. In fact, we do not necessarily disagree with the final result reached by the district court and this decision does not preclude the district court from reaching the same decision after consideration of different hourly rates. Nonetheless, we remand this issue for reanalysis in light of our adoption of *Brooks.*

## ATTORNEYS' FEES AND COSTS ON APPEAL

■ A plaintiff is entitled to attorneys' fees under § 1988 when:

(1) it wins on the merits of its claim, (2) the relief it receives materially alters the legal relationship between the parties by modifying the defendant's behavior, and (3) the relief directly benefits the plaintiff.

926

*Martinez v. Wilson,* 32 F.3d 1415, 1422 (9th Cir.1994). "When a party meets with partial success on appeal, we have deemed it proper to award fees only for those claims successfully defended on the merits." *Larez,* 946 F.2d at 649. Trevino was successful only on the issue of attorneys' fees. However, Trevino will receive a direct benefit only if the attorneys' fee award is increased on remand. Thus, whether Trevino is entitled to fees with respect to her appeal regarding attorneys' fees cannot be determined until after remand. In the event the district court increases the amount of attorneys' fees awarded to Trevino, the district court is directed to set and award a reasonable attorneys' fee for Trevino's appellate efforts relating to the attorneys' fee issue. The parties shall each bear their own costs of appeal.

## CONCLUSION

The district court's decisions concerning summary judgment, discovery issues, testimony exclusion and presumed damages are affirmed. The district court's judgment as to attorneys' fees is vacated for reanalysis consistent with this opinion. AFFIRMED in part, VACATED in part, and REMANDED. No costs allowed.