**W.E. GREEN, Plaintiff,**

v.

**Leroy BACA, et al., Defendant.**

**No. CV02–04744 MMM(MANX).**

United States District Court, C.D. California.

Jan. 25, 2005.

Stephen Yagman, Marion R. Yagman, Yagman & Yagman & Reichmann, Venice, CA, for Plaintiff.

Cindy S. Lee, David D. Lawrence, Jeremy B. Warren, Paul B. Beach, Franscell, Strickland, Roberts & Lawrence, Glendale, CA, for Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING REASONABLE ATTORNEYS' FEES AND COSTS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 37(A)(4)

NAGLE, United States Magistrate Judge.

Before the Court is the question of whether an award of reasonable fees and costs should issue against defendant Los Angeles County.

Rule 37(a)(4)(A) of the Federal Rules of Civil Procedure provides, in relevant part:

> If the motion is granted or if the disclosure or requested discovery is provided after the motion was filed, the court shall, after affording an opportunity to be heard, require the party ... whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust.

In this case, plaintiff's efforts to obtain discovery regarding the over-detention of inmates in the Los Angeles County ("County") jail system were unduly complicated and extraordinarily delayed by the failure of the County and/or its counsel to investigate promptly and effectively the records available, both in hard-copy and computer-based formats, regarding such over-detentions. From August 26, 2003, the date of the first hearing on plaintiff's motion to compel the production of information concerning over-detentions, through May 19, 2004, the Court and plaintiff's counsel were never specifically apprised of the availability of computer-based records regarding over-detentions, despite extensive questioning by the Court and Court orders that declarations be provided regarding the availability of such documents and the burden associated with their production. During this prolonged period, this Court held numerous hearings concerning plaintiff's motion, *i.e.*, on August 26, 2003, September 30, 2003, October 2, 2003, October 20, 2003, February 18, 2004, June 30, 2004, and August 3, 2004, and issued several additional minute orders related to this dispute, *i.e.*, minute orders dated August 29, 2003, September 3, 2003, December 29, 2003, May 19, 2004, and May 28, 2004. Additional proceedings regarding this discovery dispute were conducted before United States District Judge Margaret M. Morrow.

Notwithstanding these extensive proceedings, the Court first became aware of the availability of highly-relevant, computer-based records regarding over-detentions in reviewing documents produced for *in camera* review, because four computer-generated documents were scattered among the 11,704 documents delivered to the Court. By order dated May 19, 2004, the Court raised the issue of whether sanctions should be assessed against the County and/or its counsel based on the failure to reveal the availability of, and to produce, computer-generated records regarding over-detentions. After directing counsel to brief the sanctions issue and conducting a hearing regarding this issue, the Court took the matter under submission. Having carefully considered the arguments, briefing, declarations, and billing records submitted by plaintiff and defendant County, the Court now enters this order awarding reasonable attorneys' fees and costs to plaintiff in the amount of $54,375.

The Court agrees with defense counsel that the discovery propounded by plaintiff was over-broad and plaintiff's counsel did not make a reasonable and good faith effort to meet and confer to narrow and focus the discovery requests appropriately and secure the production of relevant information and documents regarding over-detentions. However, given the history of the Court's efforts to resolve this discovery dispute, it is clear that, even if plaintiff's counsel had acted entirely reasonably and in the utmost good faith, the production of relevant documents would not have occurred without court intervention. Accordingly, the Court concludes that the County's efforts to avoid sanctions based on the asserted shortcomings of plaintiff's counsel's discovery efforts is misguided and unavailing.

The fundamental problem, which resulted in protracted proceedings regarding plaintiff's motion to compel, was the County's lack of awareness of what information existed regarding over-detentions and the alleged bureaucratic quagmire encountered by the County's counsel in their efforts to ferret out such relevant information. Given the prior litigation regarding over-detentions in which the County has been named as a defendant, it is shocking to this Court that the County apparently does not have an accountable official charged with carefully monitoring the over-detention of prisoners and ameliorating this problem in the County jail system. Yet, based upon the numerous declarations submitted by and on behalf of the County, it appears that either there is no such accountable "point person" with full knowledge of the County's methods for tracking over-detentions or counsel for the County did a very poor job in conducting a reasonable and diligent search to determine the existence of records regarding over-detentions. In either event, the quest for relevant documents regarding over-detentions was painstaking and slow as a consequence of the ineptitude of the County or its counsel.

The Court concludes that the County's failure to provide relevant information and/or documents regarding over-detentions in response to plaintiff's discovery requests, and specifically to ascertain the existence of readily-accessible computer-based information regarding over-detentions, for a period of months was not "substantially justified" and "necessitated the motion" to compel and follow-up proceedings that ultimately resulted in the identification and production of relevant, responsive documents. Fed. R. Civ. Proc. 37(a)(4)(A). Rule 37(a)(4)(A) does not require a finding of "bad faith" as a prerequisite to an award of "reasonable expenses" to the moving party. *Id.; Marquis v. Chrysler Corp.*, 577 F.2d 624, 641–42 (9th Cir.1978). Accordingly, it is appropriate to require the County to pay plaintiff "the reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. Proc. 37(a)(4)(A).

■ The calculation of the amount of a "reasonable attorney's fee" is not a precise science. It involves analysis of numerous factors, including, but not limited to: the number of hours " 'reasonably expended' " by counsel; the propriety of the hourly rate requested by counsel, given the skill and experience of counsel and the level of sophistication required for the legal services at issue; whether counsel has made a "good faith effort to exclude from [the] fee request hours that are excessive, redundant, or otherwise unnecessary"; and the "level of success" obtained through counsel's efforts.

*Hensley v. Eckerhart,* 461 U.S. 424, 433–35, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Jordan v. Multnomah County,* 815 F.2d 1258, 1262–63 (9th Cir.1987). Critically, in exercising its discretion in setting a fee, the Court must assess "the reasonableness of the fee in light of the totality of the circumstances." *Id.* at 1263 n. 7.

The Court begins its analysis of the reasonable fee to be awarded here by carefully examining the declarations of, and time records submitted by, plaintiff's counsel. *See Jordan,* 815 F.2d at 1263 n. 8 (the court "should not uncritically accept counsel's representations concerning the time expended"). Initially, the Court notes that, in their declarations in support of plaintiff's fee request, both Marion Yagman and Stephen Yagman state that they each "contemporaneously recorded" time spent on this discovery dispute. (Declaration of Marion R. Yagman, ¶ 2; Declaration of Stephen Yagman, ¶ 2.) However, Ms. Yagman's time records reflect time entries for July 7 and 8, 2003, totaling 7.0 hours for work described as "Prepare time sheets." Such efforts would appear to be unnecessary if time records were contemporaneously kept and, in any event, appear to relate to administrative functions for which fees should not be awarded.

Further, Stephen Yagman's time records reflect numerous conferences with Marion Yagman, specifically on August 25, September 13, October 22, November 20 and 24, and December 3, 2003, and January 13, February 27, May 24, and June 30, 2004, dates on which Ms. Yagman has no time entries relating to this case. Ms. Yagman has time entries for October 24 and December 1, 2003, and February 9 and July 6, 2004, but she does not describe conferences with Mr. Yagman, as he describes conferences with Ms. Yagman, on those dates. The only date on which both Ms. Yagman and Mr. Yagman record a conference with each other is March 4, 2004. Ms. Yagman records .25 hours for this conference, and Mr. Yagman records .50 hours for the same conference. Given these discrepancies, the Court believes it appropriate to reduce Mr. Yagman's hours by 12 hours attributable to time entries for confer-

ences with Ms. Yagman which are not matched by time entries for conferences by Ms. Yagman.[1] The above-noted discrepancies call into question the accuracy of the time records submitted.

Time entries for reviewing documents produced by the County may not be disregarded as blithely as the County's counsel suggests. If the computer-generated summaries ultimately discovered and produced pursuant to Court order had been provided at an earlier date, it might not have been necessary for counsel to review the 11,704 pages of documents produced pursuant to this Court's May 19, 2004 order. Accordingly, the Court is disinclined to discount such time entries.

■ However, the Court does believe it appropriate to eliminate time entries relating to the review of certain discovery responses provided pursuant to Court orders (*see* Marion Yagman September 10, 2003 time entry of .5 hours and January 26 and 28, 2004 time entries of 3.5, 7.5, and 5.0 hours for review of discovery responses). While it is appropriate that the County pay reasonable fees stemming its failure to provide timely information/documents regarding over-detentions, a failure that occasioned protracted motion practice, it is not appropriate, as a general matter, to compensate counsel for reviewing the discovery responses which should have been provided absent such motion practice. Thus, an additional 16.5 hours must be subtracted from Ms. Yagman's time.

Additionally, time spent in connection with the County's effort to stay *Monell* discovery, *i.e.,* a total of 6.5 hours spent by Ms. Yagman on October 3, 5, and 8, 2003, should not be included in the fee calculation. This time was spent on a matter not directly related to the County's failure to provide relevant discovery.

The total number of hours that the Court has deleted from the requested total of 223.25 hours is 42, thus leaving a total of 181.25 hours of time expended in connection with this discovery dispute. The Court must now turn to the issue of what billing rate is

---

1. On dates on which Mr. Yagman has reported a conference with Ms. Yagman as part of a collective time entry, *i.e.,* October 24, 2003, and May 24, 2004, the Court has deducted only a portion of his time entry.

appropriate "for similar services of lawyers of reasonably comparable skill and reputation." *Jordan,* 815 F.2d at 1263 (emphasis added). Clearly, when skilled practitioners of notable reputation, such as Marion Yagman and Stephen Yagman, are engaged in performing services that are "not complex" (*Trevino v. Gates,* 99 F.3d 911, 925 (9th Cir.1996)) or which involve "clerical tasks" or other "simple matters" (*Hart v. Parks,* 2001 WL 636444 (C.D.Cal.2001)), the Court may reduce the hourly rate and/or number of hours requested by counsel. For example, in *Hart,* the District Court reduced counsel's requested hourly rate of $550 for services rendered in obtaining a default judgment to an hourly rate of $250 and further reduced the claimed number of hours for these services from three to two hours. *Hart,* 2001 WL 636444 at *5. Further, the District Court reduced counsel's requested hourly rate from $550 to $450 for services rendered in opposing a motion to set aside a default and reduced the requested hours from "nearly fourteen" to three. *Id.*

■ Here, the discovery issues before the Court were far more irksome than complex. Indeed, the Court took an active role in prodding the County to conduct a diligent search for, and to produce, relevant documents responsive to appropriately narrowed—by the Court, not counsel—discovery requests regarding over-detentions. In view of the totality of the circumstances, the Court believes that, although a further reduction in the requested number of hours is not required, a reduction in the hourly rate requested by counsel is required. The Court therefore reduces the requested hourly rate from $550 per hour to $300 per hour, which calculates to a reasonable fee award of $54,375 (*i.e.,* 181.25 hours multiplied by $300 per hour). The County is ordered to pay this amount to plaintiff's counsel within thirty days of this Order.

This Court does not lightly enter such a substantial fee award. However, the County, by its inability to ascertain the existence and whereabouts of relevant records regarding over-detentions for an extended period of time, and by its objections to this Court's orders directing the production of relevant, responsive documents, caused the gross escalation of fees, which it is now being held

responsible to pay. Rule 37(a)(4)(A) of the Federal Rules of Civil Procedure is intended to "discourage the unnecessary involvement of the court in discovery." *Marquis,* 577 F.2d at 642. In this case, the Court's extraordinary involvement in resolving this discovery dispute was essential, due to the complete inability of the County and its counsel to ascertain, without extensive Court intervention, what records were available regarding over-detentions in the County jail system. The County and its counsel can blame no one, other than themselves, for the entry of this substantial fee award.

IT IS ORDERED.