NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

OCT 17 2024

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

PETER WOODS NYARECHA,
individually; ESTATE OF LEWIS
NYARECHA, by and through Peter Woods,
successor in interest,

  Plaintiffs-Appellants,

JUDITH MIREMBE,

  Intervenor-Plaintiff-
  Appellant,

 and

LEON NYARECHA,

  Intervenor-Plaintiff,

 v.

COUNTY OF LOS ANGELES; et al.,

  Defendants-Appellees.

No.   23-55773

D.C. No.
2:20-cv-04474-WLH-MAA

MEMORANDUM*

Appeal from the United States District Court
for the Central District of California
Wesley L. Hsu, District Judge, Presiding

Argued and Submitted September 13, 2024
Pasadena, California

*     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Before: FRIEDLAND and DESAI, Circuit Judges, and SCHREIER,[**] District Judge.

Appellants, Peter Woods Nyarecha, on behalf of both himself and his son Lewis Nyarecha's estate, and Judith Mirembe, appeal the district court's grant of summary judgment on their *Monell* 42 U.S.C. § 1983 claim in favor of Los Angeles County and the Los Angeles County Sherriff's Department (LASD).[1] We have jurisdiction under 28 U.S.C. § 1291 and we reverse and remand.

In March 2018, Lewis Nyarecha (Nyarecha) was arrested and placed in the custody of the LASD at the Twin Towers Correctional Facility in Los Angeles. Because of a medical diagnosis, Nyarecha was housed in moderate observation housing (MOH).

On June 6, 2018, Nyarecha was found dead in his cell by an inmate trustee at 11:17 am. Although LASD policy requires cells designated as MOH to be subject to safety checks every 30 minutes, in the thirteen hours prior to Nyarecha being found, the officers completing the checks of Nyarecha's cell block did not assess Nyarecha's condition.

---

[**] The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota, sitting by designation.

[1] Appellants do not appeal the district court's grant of summary judgment in favor of the individual defendants.

We review a district court's grant of summary judgment de novo, viewing all evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Herrera v. Los Angeles Unified Sch. Dist.*, 18 F.4th 1156, 1158 (9th Cir. 2021). To impose *Monell* liability under 42 U.S.C. § 1983 on a municipality or governmental entity, plaintiffs "must prove: [that] (1) [plaintiff] had a constitutional right of which he was deprived; (2) the municipality had a policy [or custom]; (3) the policy [or custom] amounts to deliberate indifference to his constitutional right; and (4) the policy [or custom] is the moving force behind the constitutional violation."[2] *Gordon v. County of Orange*, 6 F.4th 961, 973 (9th Cir. 2021) (citation omitted).

Appellants brought their action under the "custom or policy" theory of liability. A governmental policy or custom is "a deliberate choice to follow a course of action . . . by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). Under *Monell*, one way a plaintiff may establish a policy or custom is by showing that the alleged constitutional violation

[2] It is undisputed that Nyarecha had a constitutional right to adequate safety checks. *See Gordon v. County of Orange*, 6 F.4th 961, 973 (9th Cir. 2021) ("We [] hold that pre-trial detainees do have a [constitutional] right to direct-view safety checks sufficient to determine whether their presentation indicates the need for medical treatment.").

was done in accordance with the governmental body's "longstanding practice or custom." *Gordon*, 6 F.4th at 973 (citation omitted). Generally, "[p]roof of a single incident of unconstitutional activity is not sufficient." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985) (plurality opinion). A plaintiff's claim cannot be based on "isolated or sporadic incidents; [liability] must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th 867, 884 (9th Cir. 2022) (alteration in original) (quoting *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996)).

Appellants argue that the twenty-six checks that occurred before Nyarecha was found dead are sufficient to show that LASD had a custom or policy of not actually assessing the condition of detainees during checks. The district court rejected this argument and characterized the thirteen-hour period as a single incident, holding that it was not of sufficient duration to evidence a custom or policy under *Monell*. We disagree. The fact that the constitutionally inadequate checks occurred in quick succession over a relatively short period of time does not bar *Monell* liability. *See, e.g.*, *Menotti v. City of Seattle*, 409 F.3d 1113, 1147–49 (9th Cir. 2005) (holding that a series of constitutional violations committed by multiple officers during the course of a single day was sufficient to create a

4

genuine issue of fact as to whether the city had an unconstitutional custom or policy).

Here, the evidence in the record, viewed in the light most favorable to Appellants, supports an inference that the safety checks that occurred in the hours preceding Nyarecha's death represent a practice or custom capable of satisfying the standard for *Monell* liability. Unlike in *Gordon*, where the plaintiff specifically challenged two deficient safety checks carried out by the same officer, and where at most three other deficient safety checks had occurred, 6 F.4th at 966, the record here shows that twenty-six different safety checks each of a seven-cell area, performed by at least six officers,[3] working two different shifts, were *all* constitutionally deficient. During those checks, none of the officers stopped outside of Nyarecha's cell or the cells of the other detained inmates. Instead, the officers consistently completed their checks of Nyarecha's seven-cell area in under twenty seconds, without breaking stride or pausing to look into the cells. And at no point did any officer attempt to elicit a response from Nyarecha or any other inmate. Moreover, the officers each completed their checks independently, and completed them in the exact same deficient manner, indicating that the behavior

---

[3] It is unclear exactly how many officers are shown in the video, but at least six officers (Nieves, Blandon, Snell, Cruz, Saenz, and Zhu) completed checks of Nyarecha's cell.

exhibited during the twenty-six checks is indeed the norm. It is highly unlikely such consistency would have been seen if this were not the de facto policy.

Additionally, Sergeant Gary Kellum, the safety check sergeant charged with supervising officers who conduct safety checks, asserted that, after reviewing video footage of the checks that occurred on the morning of Nyarecha's death, he believed the checks were compliant with LASD policy. Kellum's statement further supports the inference that safety checks in which officers do not appear to stop at an inmate's door for more than a few seconds and do not appear to look through the door to discern the inmate's condition are consistent with LASD's policy.

Thus, we reverse and remand to the district court for consideration consistent with this decision.

**REVERSED AND REMANDED**