127 F.3d 875
 42 Cont.Cas.Fed. (CCH) P 77,182, 97 Cal. Daily
Op. Serv. 7975,
97 Daily Journal D.A.R. 12,861
In Re: H. Edwin and Mary Jo SCHIMMELS, Debtors.
UNITED STATES of America, Plaintiff-Appellant,
v.
H. Edwin SCHIMMELS; Mary Jo Schimmels, Defendants-Appellees.
 No. 95-16937.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 17, 1997.
Decided Oct. 14, 1997.
 
 1
 Jeffrey A. Clair, Appellate Staff Civil Division, Department of Justice, Washington, DC, for plaintiff-appellant.
 
 
 2
 Alan R. Smith, Law Offices of Alan R. Smith, Reno, NV, for defendants-appellees.
 
 
 3
 Appeal from the United States District Court for the District of Nevada; Edward C. Reed, Jr., Senior District Judge, Presiding. D.C. No. CV-94-836-ECR.
 
 
 4
 Before: FARRIS and TASHIMA, Circuit Judges, and STAGG, Senior District Judge.*
 
 STAGG, Senior District Judge:
 
 5
 On behalf of the United States of America, relators brought a qui tam action under the False Claims Act, 31 U.S.C. § 3729-3731, against defendants, alleging fraud against the government. Relators received partial judgment against defendants who, in turn, filed for bankruptcy. Both relators and the government filed a Proof of Claim in the defendants' bankruptcy case and brought independent adversary proceedings therein concerning the dischargeability of the defendants' False Claims Act debts. The bankruptcy court granted summary judgment in favor of the defendants in the relators' adversary proceeding, and the government's adversary proceeding was subsequently dismissed as res judicata. The government appealed its dismissal to this court. We affirm.I. FACTS AND PROCEDURAL HISTORY
 
 
 6
 A. The Qui Tam Action.
 
 
 7
 In 1989, Steven Rudd, Mark Lanterman, Howard Hamby, Debbie Gibson, and Henry Winburn (hereinafter collectively referred to as the "relators") commenced an action in the United States District Court for the Eastern District of Washington under the False Claims Act against General Contractors, Inc. ("GCI"), a sewage and water projects contractor in Spokane, Washington, and several of its officers and shareholders.[1] In their complaint, the relators alleged that the defendants defrauded the government on seven major public works projects (1) by falsely certifying that they had paid their employees in accordance with the wage standards prescribed by the Davis-Bacon Act, 40 U.S.C. §§ 276a-1 and 276C, AND (2)[2] by falsifying the results of mandatory structural tests of sewer lines constructed under government contract.
 
 
 8
 In February 1993, GCI and two of the individual defendants negotiated a settlement with the relators, and a consent judgment was entered against them. H. Edwin Schimmels, the president and a stockholder of GCI, and Mary Jo Schimmels, the company's assistant treasurer and a stockholder (hereinafter collectively referred to as the "Schimmelses"),[3] however, did not settle, and the case continued against them as the last remaining defendants.
 
 
 9
 On December 15, 1992, the district court entered a partial summary judgment against the Schimmelses, holding that they had violated the False Claims Act by knowingly and falsely certifying to the government that their employees had been paid in accordance with the Davis-Bacon Act. Specifically, the court held that the Schimmelses' contributions to an "employee training trust" did not count as "wages" for the purposes of complying with the Davis-Bacon Act;[4] that the Schimmelses knew or should have known that these contributions could not be considered as "wages"; that the government relied on these representations in making payments under its contracts with the Schimmelses; and that these false wage certifications, therefore, violated the False Claims Act.[5]
 
 
 10
 On March 12, 1993, the district court entered an Order in the relators' qui tam action, specifying damages. The district court found that the Schimmelses had submitted 149 false claims to the government in violation of the False Claim Act and that as a result of these false claims, the government had incurred actual damages in the amount of $14,958. Therefore, the court ordered the Schimmelses to pay treble damages in the amount of $44,874. The district court's March 12, 1993 Order, however, left several issues in the qui tam action unresolved. In particular, the district court (1) reserved judgment on the amount of civil money penalties to be assessed against the defendants;[6] (2) failed to apportion the recovery between the relators and the government as required by 31 U.S.C. § 3730(d)(2);[7] and (3) failed to rule on a second summary judgment motion with respect to other alleged violations of the False Claims Act by the Schimmelses.[8]
 
 
 11
 B. The Bankruptcy Proceedings.
 
 
 12
 On April 7, 1993, the Schimmelses filed a petition for Chapter 11 bankruptcy in the United States District Court for the District of Nevada. Pursuant to 11 U.S.C. § 362(a), an "automatic stay" took effect, staying all judicial actions against the Schimmelses and all enforcement proceedings against their property. Thus, the relator's qui tam action was effectively brought to a standstill while major issues remained unresolved.
 
 
 13
 1. The Relators' Motion For Relief From The Automatic Stay.
 
 
 14
 On July 12, 1993-shortly after commencement of the Schimmelses' bankruptcy proceeding-the relators moved the bankruptcy court for relief from the automatic stay in order to litigate the remaining issues in their qui tam action, including the assessment of penalties, the apportionment of the recovery, and the resolution of the outstanding motion for summary judgment.[9] The bankruptcy court, however, denied the relators' motion, thereby continuing the stay. The relators appealed this ruling to the Bankruptcy Appellate Panel for the Ninth Circuit.
 
 
 15
 The bankruptcy appellate panel upheld the lower court's order. The panel stated that further litigation of the relators' qui tam action would be futile because any and all judgments rendered in that action would be discharged at the conclusion of the bankruptcy case. The panel reasoned that the Schimmelses' False Claim Act debts would not be exempted from discharge under 11 U.S.C. § 523(a)(2)(A)-as argued by the relators-because they were not incurred through the Schimmelses' specific intent to defraud their creditors-a necessary finding for "nondischargeability" under section 523(a)(2)(A).[10] Moreover, the panel found that the Schimmelses' qui tam debts would not be exempted from discharge under 11 U.S.C. § 523(a)(7) because the penalties imposed under the False Claims Act are compensatory in nature and section 523(a)(7) only exempts debts that are a "fine, penalty, or forfeiture" payable to the government that are not compensatory. The relators appealed the bankruptcy appellate panel's decision to this court.
 
 
 16
 2. The Relators' Adversary Complaint.
 
 
 17
 Independent of the aforementioned motion, the relators filed a "Complaint To Determine Dischargeability" in the bankruptcy court on July 12, 1993, seeking a judicial determination as to whether any damages and penalties assessed against the Schimmelses under the False Claims Act would be dischargeable in bankruptcy.[11] However, without reaching the merits of the relators' complaint, the bankruptcy court granted the Schimmelses' motion for summary judgment on January 4, 1994, finding that the relators had failed to file a timely opposition thereto. The relators appealed this ruling to the United States District Court for the District of Nevada, and the district court dismissed the appeal for lack of subject matter jurisdiction, concluding that the relators had not filed a timely notice of appeal from the bankruptcy court's judgment. The relators appealed the district court's decision to this court.
 
 
 18
 3. The Government's Adversary Complaint.
 
 
 19
 On July 9, 1993-three days before the relators filed their adversary complaint against the Schimmelses--the government had filed its own adversary complaint on the same issue of dischargeability. This proceeding, however, lay dormant for approximately six months while the bankruptcy court took up the relators' complaint. Finally, in late April 1994, the relators, having lost their own adversary proceeding in bankruptcy court, filed a motion to intervene as plaintiffs in the government's adversary proceeding. The bankruptcy court denied this motion, and the relators appealed to the district court. The government's case against the Schimmelses went forward, and the bankruptcy court entered summary judgment in favor of the Schimmelses, reasoning--like the bankruptcy appellate panel--that all damages and penalties imposed in the qui tam action would be dischargeable under section 1141 of the Bankruptcy Code. The government appealed this decision to the district court.
 
 
 20
 Consolidating the relators' and the government's appeals, the district court held (1) that the relators' attempt to intervene in the government's adversary proceeding was barred by the doctrine of res judicata because they had already brought their own adversary proceeding against the Schimmelses on this very same issue and lost on the merits and (2) that the summary judgment entered against the relators in their adversary proceeding had full res judicata effect against the United States as well, barring its independent adversary proceeding against the Schimmelses. The district court reasoned that under Rule 41(b) of the Federal Rules of Civil Procedure,[12] the involuntary dismissal of the relators' adversary proceeding had the effect as an "adjudication upon the merits" on this issue and that as the qui tam action had been brought by the United States ex relatione the relators, the government was bound by this decision's res judicata effect.[13] See Record Excerpts at 15-20. The government appealed the district court's decision to this court.
 
 
 21
 4. Proceedings In The Ninth Circuit.
 
 
 22
 On appeal, the government informed this court that the relators had previously filed related appeals from the bankruptcy appellate panel's decision on the applicability of the automatic stay and from the district court's decision on their adversary complaint. This court agreed to hold the government's appeal in abeyance while it considered the relators' appeals.
 
 
 23
 On April 26, 1996, this court vacated as moot the bankruptcy appellate panel's decision affirming the bankruptcy court's order denying the relators' motion for relief from the automatic stay. See In re Schimmels, No. 95-15143, 1996 WL 207147 (9th Cir. April 26, 1996). The panel explained that by the time it took up the case, a reorganization plan had already been confirmed in the Schimmelses' bankruptcy case and that this had, therefore, mooted the relators' appeal from an adverse ruling concerning the applicability of the automatic stay. The panel added that vacatur was necessary "to prevent a judgment, unreviewable because of mootness, from spawning any legal consequences." Id. at 2.
 
 
 24
 In a published opinion decided May 30, 1996, another panel of this court affirmed the district court's decision in the relators' adversary proceeding dismissing as untimely their appeal from the bankruptcy court's adverse decision on the dischargeability issue. See United States ex. rel. Rudd v. Schimmels, 85 F.3d 416 (9th Cir.1996). Like the district court, however, the panel did not reach the substantive issue raised in the relators' adversary complaint.
 
 
 25
 As these related cases have now been resolved, the government's appeal from the district court's order dismissing its adversary complaint as res judicata is again before the court. The narrow issue for the court's consideration is whether the summary judgment entered against the relators in their adversary proceeding against the Schimmelses is res judicata with respect to the government.
 
 
 26
 The government contends that "[t]he district court's decision, in binding the government to a default judgment entered against a different party, seriously misconstrues the fundamental principles of res judicata and frustrates Congress's intent to ensure that a debtor may not escape liability for fraud merely by filing for bankruptcy." Brief For The United States at 15. The Schimmelses, on the other hand, maintain that the relators and the government are one and the same party; that this "unity" is evidenced by the fact that the relators' counsel, by his own admission, "represented" the United States; that the final judgment against the relators has a binding effect against the government; and that the district court's judgment against the government on the dischargeability issue should, therefore, be affirmed.
 
 II. LAW AND ANALYSIS
 
 27
 The applicability of the doctrine of res judicata is a question of law subject to de novo review. See Lea v. Republic Airlines, Inc., 903 F.2d 624, 634 (9th Cir.1990).
 
 
 28
 On appeal, the government maintains that the doctrine of res judicata does not bind it to a default judgment entered against the relators who independently litigated their "separate financial claim" against the Schimmelses. Specifically, the government argues:
 
 
 29
 (1) that the district court's conclusion that the government is in privity with the private, qui tam relators is flawed because each party has "separate and discrete financial interests in the proceeds of [the] qui tam action," Brief For The United States at 15;
 
 
 30
 (2) that the district court erred by concluding that the bankruptcy court's involuntary dismissal of the relators' adversary proceeding for failure to prosecute is a "judgment on the merits" for the purpose of res judicata, id.; and
 
 
 31
 (3) that binding it to another party's default judgment "violates basic principles of procedural fairness," id.
 
 
 32
 Each of these contentions will be taken-up seriatim.
 
 
 33
 1. Privity.
 
 
 34
 The doctrine of res judicata provides that "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." Montana v. United States, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). The application of this doctrine is "central to the purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdiction." Id. (quoting Southern Pacific Railway Co. v. United States, 168 U.S. 1, 49, 18 S.Ct. 18, 27, 42 L.Ed. 355 (1897)). Moreover, a rule precluding parties from the contestation of matters already fully and fairly litigated "conserves judicial resources" and "fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." Id. at 153-54, 99 S.Ct. at 973-74. These interests are likewise implicated
 
 
 35
 when nonparties assume control over litigation in which they have a direct financial or proprietary interest and then seek to redetermine issues previously resolved.... [T]he person for whose benefit and at whose direction a cause of action is litigated cannot be said to be "strangers to the cause" ... [O]ne who prosecutes or defends a suit in the name of another to establish and protect his own rights, or who assists in the prosecution or defense of an action in aid of some interest of his own ... is as much bound ... as he would be if he had been a party to the record.
 
 
 36
 Id. at 154, 99 S.Ct. at 974 (quoting Schnell v. Peter Eckrich & Sons, Inc., 365 U.S. 260, 262, n. 4, 81 S.Ct. 557, 559, 5 L.Ed.2d 546 (1961))(emphasis added). Thus, the "doctrine of privity extends the conclusive effect of a judgment to nonparties who are in privity with parties in an earlier action." United States v. ITT Rayonier, Inc., 627 F.2d 996, 1003 (9th Cir.1980)(emphasis added).
 
 
 37
 "Privity"--for the purposes of applying the doctrine of res judicata--is a legal conclusion "designating a person so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved." Southwest Airlines Co. v. Texas International Airlines, Inc., 546 F.2d 84, 94 (5th Cir.), cert. denied, 434 U.S. 832, 98 S.Ct. 117, 54 L.Ed.2d 93 (1977) (citing Jefferson School of Social Science v. Subversive Activities Control Board, 331 F.2d 76 (D.C.Cir.1963)). Federal courts have deemed several relationships "sufficiently close" to justify a finding of "privity" and, therefore, preclusion under the doctrine of res judicata:
 
 
 38
 First, a non-party who has succeeded to a party's interest in property is bound by any prior judgment against the party. Second, a non-party who controlled the original suit will be bound by the resulting judgment. Third, federal courts will bind a non-party whose interests were represented adequately by a party in the original suit.
 
 
 39
 Id. at 95. In addition, "privity" has been found where there is a "substantial identity" between the party and nonparty, ITT Rayonier, 627 F.2d at 1003 (citing Chicago, R.I. & P. Ry. Co. v. Schendel, 270 U.S. 611, 621, 46 S.Ct. 420, 424, 70 L.Ed. 757 (1926)); where the nonparty "had a significant interest and participated in the prior action," id. (citing Montana v. United States, 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979)); and where the interests of the nonparty and party are "so closely aligned as to be 'virtually representative,' " id. (quoting Aerojet-General Corp. v. Askew, 511 F.2d 710, 719 (5th Cir.), cert. denied, 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975)). Finally, a relationship of privity can be said to exist when there is an "express or implied legal relationship by which parties to the first suit are accountable to non-parties who file a subsequent suit with identical issues." Id.; See also In re Imperial Corporation of America, 92 F.3d 1503, 1505 (9th Cir.1996). Thus, for example, in ITT Rayonier, the court stated: "In some contexts, the relationship between governmental authorities as public enforcers of ordinances and private parties suing for enforcement as private attorneys general is close enough to preclude relitigation." 627 F.2d at 1003 (citing Southwest Airlines Co. v. Texas International Airlines, Inc., 546 F.2d 84 (5th Cir.), cert. denied, 434 U.S. 832, 98 S.Ct. 117, 54 L.Ed.2d 93 (1977))(emphasis added); See also Restatement (Second) of Judgments § 37 cmt. b & Reporter's Note, cmt. b (1982) ("Unless the official party in whose name the action is brought or defended has some participatory or supervisory authority in the action, he is not concluded by the judgment.... Where, however, the proceedings may be brought by a private party only with the authorization of the responsible public authority, the latter is concluded by the action") (emphasis added).
 
 
 40
 In the case sub judice, the district court found that the qui tam provisions of the False Claims Act created a "sufficiently close" relationship between the United States and the private relators such that the government was bound by the adverse judgment entered against the relators in their adversary proceeding concerning the dischargeability of the False Claims Act judgments against the Schimmelses. Although the government admits that a relator in a qui tam action is in privity with the United States "for some purposes", it argues that in this case the district court erred by concluding that "the relators, in seeking to vindicate their own pecuniary interest in recovering a share of the qui tam judgment, also represented the government's separate and discrete financial interests in the outcome of the bankruptcy case." Brief for the United States at 22.
 
 
 41
 First, the government argues that the district court "overlooked the fact that it appeared in the bankruptcy proceedings through its own counsel and sought independently to litigate its own financial interests in recovering a share of the qui tam judgment." Id. It is true that the government filed a separate Proof of Claim in the Schimmelses' bankruptcy suit in the amount of $1,490,000 for a judgment obtained against them on March 12, 1993[14] and that it instituted its adversary proceeding in bankruptcy court on the issue of dischargeability three days before the relators. However, these points are immaterial. The government was aware of, and even tacitly participated in, the adjudication of the relators' adversary proceeding,[15] but never sought to intervene therein.
 
 
 42
 Second, the government maintains that its interests in recovering a share of the qui tam judgment diverge from, and even conflict with, the interests of the relators. Brief For The United States at 23. This court in United States ex rel. Killingsworth v. Northrop Corp., 25 F.3d 715 (9th Cir.1994), stated that although "[t]he statutory scheme of the False Claims Act provides protection for the rights of both the relator and the government[, i]t is clear ... that in a qui tam action, the government is the 'real party in interest.' " Id. at 720 (citing United States ex. rel. Milam v. University of Texas, 961 F.2d 46, 50 (4th Cir.1992)(the "United States is the real party in interest in any False Claims Act suit, even when it permits a qui tam relator to pursue the action on its behalf")). Nonetheless, the government contends that its interests in the qui tam judgment diverge from the relators', citing Northrop. In that case, the government challenged a relator's structured settlement of a qui tam action under the False Claims Act. In the government's opinion, the settlement in question maximized the relator's recovery on his own independent tort claim against the defendant and minimized the qui tam recovery, thereby denying the government its fair share of the settlement proceeds. Id. at 723-35. Recognizing a conflict of interests, this court permitted the government to object to the terms of the settlement in a hearing without formally intervening in the suit. Id. at 724-45. Simply, there is no such divergence of interest in this suit because the relators herein are not concurrently pursuing a private cause of action against the Schimmelses. Rather, there is an unity of interest between the relators and the government who will share any and all recovery in the qui tam action against the Schimmelses according to proportions determined by a court, not by a party in interest. Accordingly, Northrop is inapposite.
 
 
 43
 Likewise, the government's argument that certain subsections of the False Claims Act recognize an inherent conflict of interest between a qui tam relator and the United States is unavailing.[16] In fact, these sections reinforce the proposition that the government is the true party in interest in any qui tam action, despite the relator's litigious role. See United States v. Northrop Corp., 59 F.3d 953, 968 (9th Cir.1995), cert. denied, --- U.S. ----, 116 S.Ct. 2550, 135 L.Ed.2d 1069 (1996) ("[T]he private right of recovery created by the qui tam provisions of the [False Claims Act] exists not to compensate the qui tam relator, but the United States. The relator's right to recovery exists solely as a mechanism for deterring fraud and returning funds to the federal treasury") (emphasis in original) (citation omitted).
 
 
 44
 Third, the government argues that even if it has a supervisory or participatory role in the relator's qui tam action under the False Claims Act, it does not have the statutory power to control the relators' filings in the Schimmelses' bankruptcy proceeding. Brief For The United States at 26. This argument is tenuous, at best. 31 U.S.C. § 3730(c)(3) gives the government the authority to intervene in the relator's qui tam action upon a showing of good cause. It is inconceivable that the government's power of intervention under the False Claims Act would not extend to issues involved in the enforcement of qui tam judgments, and as bankruptcy is often a reality in enforcement proceedings, it is only logical that the government's power to intervene extends to the Schimmelses' bankruptcy proceeding. A rule to the contrary would be arbitrary. See United States v. Northrop Corp., 59 F.3d 953 (9th Cir.1995), cert. denied, --- U.S. ----, 116 S.Ct. 2550, 135 L.Ed.2d 1069 (1996) (recognizing the government's right to intervene in qui tam suits to challenge a settlement); United States v. Texas Instruments Corp., 25 F.3d 725 (9th Cir.1994)(same).[17]
 
 
 45
 Finally, relying on United States ex rel. Kelly v. Boeing Co., 9 F.3d 743 (9th Cir.1993), cert. denied, 510 U.S. 1140, 114 S.Ct. 1125, 127 L.Ed.2d 433 (1994), the government suggests that "the district court failed to recognize that the relator's interest in the qui tam judgment is derived from a partial assignment of the government's claim against the qui tam defendant, and that under well settled rules of claim preclusion a judgment entered against a partial assignee cannot bind the assignor." Brief For The United States at 27. In Boeing, the issue before the court was whether a qui tam relator has standing to bring a suit in the name of the government under the False Claims Act. Answering in the affirmative, the Court reasoned that under the Act, the relator is, in effect, a partial, limited, and conditional assignee of the government's fraud claim against the defendant and, thus, has standing to sue. Id. at 748-49. Despite this relationship, however, the Act does not support a finding that the government and the relators can pursue their interests in the subject fraud litigation separately. In fact, inasmuch as the government under the Act "assigns" the relator its fraud claim, it is bound by the relator's actions therein. See United States ex rel. Stillwell v. Hughes Helicopters, Inc., 714 F.Supp. 1084, 1090-91 (C.D.Cal.1989) ("[T]he relator's control over a suit in which the government has declined to intervene may include the ability to make admissions on behalf of the United States, answer interrogatories, and trigger the doctrine of res judicata and collateral estoppel")(emphasis added). In the present case, had the government elected to proceed against the Schimmelses on some claims and deferred to the relators on others, then and only then, would there be the type of "partial assignment" relationship urged by the government. Again, although this argument has some support in Stillwell, the court would only frustrate Congress's carefully-laid scheme in the False Claims Act by indulging the government on this point.
 
 
 46
 2. Judgment On The Merits.
 
 
 47
 Relying on its language, the government argues that Rule 41(b)--on which the district court relied to conclude that the involuntary dismissal of the relators' adversary proceeding operated as an adjudication on the merits barring the government's subsequent suit on the same issue--"only governs the effect of an involuntary dismissal on the plaintiff's cause of action, not the cause of action of a different litigant." Brief for the United States at 16. An involuntary dismissal generally acts as a judgment on the merits for the purposes of res judicata, regardless of whether the dismissal results from procedural error or from the court's considered examination of the plaintiff's substantive claims. See In re Daily, 47 F.3d 365, 368-69 (9th Cir.1995); Appeal of Herzog, 953 F.2d 317 (7th Cir.1992); In re Gottheiner, 703 F.2d 1136, 1140 (9th Cir.1983). The government apparently challenges, not the preclusive effect of Rule 41(b), which, by its terms, only applies to the "plaintiff," but rather the operation of the doctrine of res judicata. As established above, the doctrine of res judicata applies to parties and their privies, and as the government has been conclusively shown to be in privity with the relators, the involuntary dismissal of the relators' claim has a preclusive effect not only on the relators, but also on the government. Rule 41(b) and the doctrine of res judicata do not, as the government submits, operate independently of each other; rather, the latter extends the scope of the former to include not only "the plaintiff," but also those in privity therewith.
 
 
 48
 3. Due Process.
 
 
 49
 Finally, the government argues that "binding a nonparty to a prior default judgment entered against a different litigant violates basic considerations of procedural fairness." Brief for the United States at 32. This is especially true-the government contends-(1) because the judgment entered by the district court against the relators rested not on a substantive determination of law, but rather on the relators ' failure to timely oppose the Schimmelses' motion for summary judgment and (2) because allowing the default judgment to foreclose further litigation concerning the dischargeability of False Claims Act debts "would neither avoid duplicative litigation nor further the interests of justice." Id. at 33-34.
 
 
 50
 In Southwest Airlines Co. v. Texas International Airlines, Inc., 546 F.2d 84, 101 (5th Cir.), cert. denied, 434 U.S. 832, 98 S.Ct. 117, 54 L.Ed.2d 93 (1977), the court suggested that a "case by case due process consideration should dominate the analysis of res judicata questions." This case-by-case analysis should include a balancing of the following factors:
 
 
 51
 participation by the precluded party in the prior proceeding through intervention, combined discovery, amicus submissions, presence of counsel at hearings, testifying as a witness, advising previous parties;
 
 
 52
 the extent of congruence between the legal interests and positions of the party to the earlier suit and those of the precluded party;
 
 
 53
 the quality of representation of the precluded party's interests;
 
 
 54
 the burdens relitigation poses on the judicial system; and
 
 
 55
 the cost and harassment that relitigation poses to the parties.
 
 
 56
 Id. at 101 (citing Comment, Non-Parties and Preclusion by Judgment: The Privity Rule Reconsidered, 56 Calif.L.Rev. 1098, 1132, and 1968; Note, Collateral Estoppel of Non-Parties, 87 Harv.L.Rev. 1485, 1500; and Note, The Expanding Scope of the Res judicata Bar, 54 Tex.L.Rev. 527, 528, 534 (1976)). These considerations are as relevant today as they were twenty years ago and militate in favor of preclusion in the instant case.
 
 
 57
 As established above, the relators' and government's interests in the dischargeability of the Schimmelses' False Claims Act debts are identical. Moreover, the government was fully aware of its right under the False Claims Act to intervene in the relators' adversary proceeding to protect its rights, but it chose not to do so, preferring instead to hold its own identical adversary proceeding in abeyance pending the outcome of the relators' action. In addition, the government participated in the relators' suit through the presence of its counsel at, at least, some of the hearings held during the course of the litigation. Now, the government seeks to relitigate an issue that has already been adjudicated on the merits at additional costs to itself and the Schimmelses. Taken together these factors suggest that preclusion is fair under the circumstances.
 
 III. CONCLUSION
 
 58
 Based on the foregoing analysis, the district court's judgment dismissing the government's adversary proceeding against the defendants as res judicata is AFFIRMED because (1) the bankruptcy court's summary judgment against the relators in their adversary proceeding on the same issue was an "adjudication on the merits"; (2) the government was "in privity" with the relators; (3) a judgment on the merits has a preclusive effect on the parties and those in privity therewith; and (4) the application of the doctrine of res judicata does not violate basic consideration of procedural fairness under these circumstances.
 
 
 
 *
 The Honorable Tom Stagg, Senior United States District Judge for the Western District of Louisiana, sitting by designation
 
 
 [1]
 The False Claims Act was enacted by Congress to combat fraud against the federal government. It provides that a person who knowingly presents to the United States a false claim for payment, or who otherwise conspires to defraud the United States by obtaining payment of a false claim, is liable to the government for treble damages in addition to a civil monetary penalty. See 31 U.S.C. § 37299(a). A civil enforcement action under the False Claims Act may be brought either by the Attorney General or by "[a] person ... for the person and the United States Government." 31 U.S.C. § 3730(b). A private action under the False Claims Act is termed a "qui tam action," from the Latin "qui tam pro domino rege quam pro si ipso hac parte sequitur " meaning "who sues on behalf of the King as well as himself," and the private plaintiff is referred to as the "relator." As an incentive, private individuals who prosecute meritorious qui tam actions are entitled to a percentage of the proceeds of a judgment or settlement award, in addition to reasonable expenses, attorney's fees, and costs. See 31 U.S.C. § 2730(d). When a qui tam action is filed, the United States may take over prosecution of the case within the time limits prescribed by 31 U.S.C. § 3730(b). If the United States declines to prosecute the case, then the relators may proceed with the action exclusively. See id
 The qui tam action in question was at all times prosecuted exclusively by the relators.
 
 
 [2]
 The Davis-Bacon Act, 40 U.S.C. § 276a et seq., requires contractors on all federally-assisted construction projects to pay their employees the "prevailing wage" as determined by the United States Department of Labor. See 29 C.F.R. §§ 5.9-5.12. Contractors who fall under the Act must certify on a weekly basis that they are in compliance with its requirements
 
 
 [3]
 Together, the Schimmelses held approximately a one-third interest in GCI
 
 
 [4]
 The "training trust" in question to which GCI contributed approximately $14,000 over a five year period was authorized by a local chapter of the American Builders and Contractors, a non-union association. The purpose of the trust was to improve the quality of construction workers available in the industry by financing their training. GCI's "contributions" to the trust were funded by deductions from its employees' wages
 
 
 [5]
 It should be noted that all money deducted by GCI from its employees' paychecks was contributed to the trust and that these contributions did not directly benefit the Schimmelses in any way
 
 
 [6]
 31 U.S.C. § 3729(a) mandates "civil penalties of not less than $5,000 and not more than $10,000" per violation of the False Claims Act. Based on the number of violations already determined by the district court (149), the total judgment against the Schimmelses could range from $790,000 to $1,500,000
 
 
 [7]
 Section 3730(d)(2) provides that a private qui tam plaintiff is entitled to
 receive an amount which the court decides is reasonable for collecting the civil penalties and damages. The amount shall not be less than 25 percent and not more than 40 percent of the proceeds of the action to settlement and shall be paid out of such proceeds. Such person shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs. All such expenses, fees, and costs shall be awarded against the defendant.
 
 
 [8]
 This second motion for summary judgment concerned allegations that GCI had "bank[ed] hours for certain employees for a certain period of time" in violation of the Davis-Bacon Act. Appellees' Answering Brief at 3. Specifically, "prior to 1988, GCI maintained overtime hours for certain employees on the books, and said employees could use such banked hours to purchase items at various retail stores, or would be paid or credited for such hours at least annually on the basis of straight time and not time and one-half." Id. This practice, the relators alleged, was a separate basis for the claimed 149 violations of the False Claims Act
 
 
 [9]
 11 U.S.C. § 362(d) provides that, "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the [automatic] stay ... for cause."
 
 
 [10]
 11 U.S.C. § 523 provides:
 (a) A discharge [under the Bankruptcy Code] does not discharge an individual debtor from any debt--
 (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--
 (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.
 
 
 [11]
 Bankruptcy Rule 4007(a) provides that "[a] debtor or any creditor may file a complaint with the court to obtain a determination of the dischargeability of any debt." Such a determination may be sought in an "adversary proceeding." See Bankruptcy Rule 7001(4) & (6)
 
 
 [12]
 Rule 41(b) provides:
 For failure of the plaintiff to prosecute or to comply with these rules or any order of the court, a defendant may move for dismissal of an action or of any claim against the defendant. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits.
 
 
 [13]
 It should be noted that during the course of the Schimmelses' bankruptcy proceeding, counsel for the relators had repeatedly stated in open court and in written pleadings that he, in fact, represented the United States in the relators' qui tam action. See 31 U.S.C. § 3730(b)(1) ("A person may bring a civil action for a violation of section 3729 of this title for the person and the United States. The action shall be brought in the name of the Government")
 
 
 [14]
 It should be noted that the March 12, 1993 judgment entered by the United States District Court for the Eastern District of Washington against the Schimmelses merely found them liable for $44,874.48 and made no mention of any penalties under the False Claims Act. In fact, at the time the Schimmelses filed for bankruptcy this issue was unresolved. Thus, the government's claim for $1,490,000 was merely speculative
 
 
 [15]
 In their brief, the Schimmelses point out that counsel for the relators, Daniel S. Kozma, repeatedly asserted in his written bankruptcy court pleadings and in court that he represented the United States. Appellees' Answering Brief at 12-14. Moreover, they maintain that the United States acquiesced in this "representation" because its counsel, Shirley Smith, "ha[d] often been present in court at the time Mr. Kozma made the representations" and because the government held its own adversary proceeding in abeyance for over a year, presumably awaiting the outcome of the relators' action. Id
 
 
 [16]
 The government relies on the following subsections of the False Claims Act: 31 U.S.C. § 3730(b)(1)(providing that the relator may not voluntarily dismiss a qui tam action without the consent of the Attorney General); 31 U.S.C. § 3730(c)(2)(B)(providing that the government may seek dismissal of an action under the Act over the relator's objections); 31 U.S.C. § 3730(c)(2)(C)(providing that the government may seek court orders limiting the relator's participation in the action); and 31 U.S.C. § 3730(c)(4)(providing that the government may limit the relator's right to take discovery from the government)
 
 
 [17]
 Although the issue of the government's procedural capacity to pursue its own adversary proceeding against the Schimmelses in bankruptcy court was not briefed by the parties, it has a substantial bearing on the resolution of the issues sub judice. 31 U.S.C. § 3730(c)(3) provides:
 If the Government elects not to proceed with the action, the person who initiated the action shall have the right to conduct the action. If the Government so requests, it shall be served with copies of all of the pleadings filed in the action and shall be supplied with copies of all the deposition transcripts (at the Government's expense). When a person proceeds with the action, the court, without limiting the status and rights of the person initiating the action, may nevertheless permit the Government to intervene at a later date upon a showing of good cause.
 (Emphasis added). At no time did the government seek to intervene in the relators' qui tam action. Although the qui tam action had been partially litigated in the Eastern District of Washington, the Schimmelses' bankruptcy in the District of Nevada stayed the action in medias re s. Although the qui tam action had, in effect, become intermingled with the Schimmelses' bankruptcy proceeding, the government did not seek permission from either the Eastern District of Washington or the District of Nevada to intervene therein to preserve its rights. Had the government followed the dictates of the False Claims Act and filed a motion to intervene for just cause in the relators' qui tam action, this appeal and the government's separate adversary proceeding could have been avoided in toto. If the government's motion to intervene was warranted (i.e., made with "good cause"), then it could have taken over prosecution of the suit in full, including the collection of the judgment debt from the Schimmelses' bankruptcy estate. If the government's motion was unwarranted, then the relators could have continued to conduct the action exclusively. Either result would have avoided the present dispute. Instead, the government filed its own adversary proceeding in the bankruptcy court, allowed the relators to file a similar suit on the same issue, watched the relators' claim be forfeited for procedural reasons, and then sought a separate determination of the same issue. In an attempt to "hedge its bets," the government, in effect, violated the very rationale underlying the doctrine of res judicata. It spawned duplicative litigation; it wasted the court's resources; and, more importantly, its actions undermined the idea of the finality of judgment. Although the district court recognized this in its opinion and barred the government's attempt at a "second bite at the apple," the government on appeal attempts to distance itself from the actions of the relators. This court is reluctant to sanction such ill-advised tactics, but does not find it necessary to hold today that the government's failure to intervene in the relator's qui tam action precluded it from bringing an adversary proceeding in the Schimmelses' bankruptcy case.